# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXCAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **CHRISTINA BRECKENFELD,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| **APCON, INC.** | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Christina "Tina" Breckenfeld, complaining of Defendant, APCON, Inc., and for cause of action would show the Court as follows:

### I.
### PARTIES

1. Plaintiff Christina "Tina" Breckenfeld ("Breckenfeld" or "Plaintiff") is an individual who resides in Carrollton, Denton County, Texas.

2. Defendant APCON, Inc., ("APCON" or "Defendant") a foreign corporation with its principal office in Wilsonville, Oregon may be served with process through their attorney who has agreed to accept service.

### II.
### JURISDICTION

3. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331.

### III.
### VENUE

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND – PAGE 1**

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Collin County, Texas.

## IV.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Breckenfeld has fully exhausted her administrative remedies under Title VII and has fulfilled all jurisdictional prerequisites to the filing of these claims. On May 7, 2019, Breckenfeld timely filed an employment discrimination charge against Defendant with the Equal Employment Opportunity Commission (EEOC). On July 20, 2021, the EEOC issued Breckenfeld a Notice of Right to Sue. Breckenfeld has filed this action within 90 days from her receipt of such notice.

## V.
## FACTS

6. At all times relevant to this action, APCON had approximately one hundred and fifty employees.

7. Breckenfeld is a forty-eight-year-old female.

8. APCON hired Breckenfeld into the position of Office Manager in November of 2013. Breckenfeld excelled in that position, was asked to take on ever increasing responsibility and received raises totaling over 20% of her annual income during her tenure with APCON. The week of November 12, 2018, CEO Richard Rauch ("Rauch") told Breckenfeld that "You are doing a great job and we don't want you to leave, so we thought we would throw 5% at you and see if you would take it." Beginning in 2017, Breckenfeld was asked to step in and help Gemini Investments, LLC., another company owned by Rauch with building

management issue. Breckenfeld also received two large end-of-the-year bonuses from Gemini, for the work she did on their behalf in 2017 and 2018.

9. During Breckenfeld's tenure she managed the following: office layout and arrangement, housekeeping, provided all preventative maintenance schedules, interviewed and maintained all vendors and contractors for APCON and Gemini, self-trained on badge system, security system, HVAC mechanical and controls, managed all on site meetings, purchased supplies, furniture and equipment, supported all executive management as needed, assisted HR with new hire coordination, coordinated internal technical support, participated in assisting with Gemini projects in Oregon, responsible for safety team meetings, fire drills, provided various training classes and speakers for the staff, assisted with the initial move to permanent office, handled the aesthetics of the building, participated in Summit 2017 & 2018, saved 2.5 million of the tax appraisal value, fought property taxes for Rauch's personal home and Gemini's building, trained property manager and negotiated the energy contract.

10. Throughout the time that Breckenfeld worked with Rauch, she witnessed his boorish behavior towards others. However, none of these comments had been directed at Breckenfeld. Until July of 2018 when Breckenfeld, Human Resource Manager Hannah Smallwood ("Smallwood") and Rauch were touring the on-site gym to review a recent workers compensation claim. Rauch pointed to the magazine rack and said "why do we even have those? We should have Playboy magazines," and then began explaining that he receive Playboy magazine at home. Smallwood finally asked Rauch to stop talking about Playboy magazines.

11. In September 2018, Breckenfeld asked Rauch to change her title from office manager to director.  She felt this title more aptly described her duties which related to multiple facilities.  On October 23, Rauch told Breckenfeld that she was not entitled to a promotion because she was just an admin, she doesn't help the company move forward and no one reports to her.  I think the problem here is "you're bored."  Following this request, Rauch began directing more sexually inappropriate and offensive comments towards Breckenfeld.

12. During the first week of December, Rauch was discussing the Christmas party with Roberta Reed ("Reed").  She mentioned that instead of the ugly sweater contest which APCON had used in the past that the company needed to do something different and suggested a funny hat contest.  Rauch responded by suggesting a wet t-shirt contest.  Rauch made this comment in front of numerous women that worked for APCON, including Reed, Breckenfeld, Human Resource Manager, Kisha Hill ("Hill") and Gemini employee Crystal Kephart ("Kephart").

13. On December 12, 2018, during a conference call with Breckenfeld to discuss Rauch's impending 2019 planning session in Plano, Breckenfeld asked if Rauch had any special requests for the menu.  Rauch responded by describing in lurid detail a woman that he wanted to order.

14. Additionally, on January 25, Breckenfeld overheard Rauch tell Kephart on the phone that he was frustrated because he had not been laid in a week.  In the fall of 2018, while touring the newly built suites in Plano, Rauch told Kephart and Breckenfeld that the vents look like dicks.

15. Throughout this same time frame, Rauch began isolating Breckenfeld and making bizarre and untrue accusations against her.  In November 2018, Breckenfeld asked Rauch if she

could take PTO for the week of Thanksgiving. Rauch responded by asking her "why are you asking me? People think you report to me." Breckenfeld was confused by the comment because she had always reported directly to Rauch. Breckenfeld met with Hill who had overheard the comment and asked her what Rauch meant and if her status had changed and she responded by saying "I don't know."

16. On November 27, 2018, Rauch took the badge system duties away from Breckenfeld despite the fact that it is listed as a job duty on her job description. On December 14, Breckenfeld met with Hill and Kephart. She complained to Hill that Rauch was being rude, unfairly accusatory and taking duties away from her for discriminatory and retaliatory reasons. She asked Kephart to attend the meeting to confirm that Rauch was accusing her of things that were not accurate and to confirm interactions that she had witnessed firsthand. Following the meeting, Hill sent Breckenfeld home early and told her to lay low the next week and then go on vacation and hopefully everything would settle down. Hill further encouraged Breckenfeld to reach out to Rauch.

17. On December 21, Breckenfeld texted Rauch in an attempt to schedule a meeting to discuss her concerns regarding his actions and treatment of her. Rauch never responded to this text. On December 23, Breckenfeld texted Rauch again and said "Will you please talk to me today? I have no idea what I did wrong or how to fix it. I do not want to go into the holidays like this. I can call 5cst or later. Just lmk."

18. Rauch responded to that text and accused Breckenfeld via email of wanting to own the building and refusing to train or provide security access to other employees. This accusation was false as Breckenfeld had trained Kephart on security access.

19. Breckenfeld had previously scheduled vacation time over Thanksgiving and Christmas. She received Rauch's permission to take the time off and scheduled the vacation on his calendar as she had been previously instructed to do.  However, Rauch texted her on November 30, while she was in Disney World, and chastised her for not being at work. When she reminded Rauch that her vacation was notated on his calendar, he asked her why she did that and told her that he never looks at his calendar.  Rauch then went into his calendar and declined all the meeting invites to Breckenfeld's vacation.

20. Shortly after this incident, Breckenfeld had an opportunity to travel internationally with her husband in January.  She requested additional vacation days.  However, Rauch refused to approve the vacation because he said this would be too much time away from the office, even though she had the time available and other APCON employees routinely take all three weeks of their vacation at once.  Rauch told Kephart that "I guarantee you that she won't come back from Christmas."  Breckenfeld did return to work after Christmas, foregoing the travel opportunity.

21. On January 28, 2019, Hill met with Breckenfeld and said "As you know, there has been discussion about you reporting to HR." Breckenfeld corrected Hill and explained that there had not been discussion with her, but she had instead heard of her reassignment from Kephart.

22. On February 13, 2019, Breckenfeld submitted a formal written complaint to human resources complaining about a hostile work environment, a pattern of sexual comments, retaliation and discrimination.  Less than three hours after Breckenfeld submitted this complaint, APCON launched an investigation of her expense charges.  Breckenfeld met

with Smallwood and Hill on February 14 regarding her complaint, and they promised to investigate.

23. On February 18, Rauch stripped Breckenfeld's access to the HVAC system. On that same date, Breckenfeld reported to Hill that she believed the expense investigation and the loss of access to the HVAC system were further instances of retaliation against her. On March 8, Hill informed Breckenfeld that the investigation was on-going and that it would be placed on hold during Rauch's vacation. After the complaint Breckenfeld's duties regarding on-site visitors was taken away and all of her purchasing for the office was put on hold pending Rauch's approval of even the most basic office level purchases.

24. Unfortunately, Breckenfeld was diagnosed with breast cancer on March 19, 2019. Breckenfeld reported her cancer to Hill on March 27 and requested intermittent FMLA leave to accommodate her treatment schedule. APCON eventually approved her leave request. On March 28, Rauch took Breckenfeld's master building key removing her access to all keyed doors in the building.

25. On April 4, Rauch instructed Breckenfeld to give Kephart the blank badges and the exterior door keys to the building. Kephart had already requested the keys from Breckenfeld on numerous occasions and she had explained that she did not have the keys. Rauch also accused Breckenfeld of hiring a locksmith to change the locks. Feeling like the repeated requests were badgering, Breckenfeld took the badges to Hill and requested that Rauch be instructed to not communicate with her while the investigation was on-going. Shortly after this conversation Smallwood told Breckenfeld that the investigation into her complaint was complete and that APCON would provide additional training.

26. On April 29, Breckenfeld underwent surgery for her breast cancer and took off two workdays. On Monday, May 6, Breckenfeld requested to take FMLA leave beginning at 2 p.m. for a doctor's appointment. Hill sent a meeting request for a 1:30 meeting, but Breckenfeld told her that she had planned to take a late lunch at 1 p.m. in order to allow her to get more work done before her appointment. At 12:55 Hill pulled Breckenfeld into a meeting and terminated her (allegedly as a reduction in force). She did this despite knowing that Breckenfeld was scheduled for treatment an hour later.

27. APCON failed to fulfill their legal duties under the Older Worker Benefit Protection Act and never provided Breckenfeld with the required notice of the individuals covered by the alleged lay-off including job titles and ages of those selected for termination.

## VI.
## CAUSE OF ACTION

### Count One – Title VII Gender Discrimination

28. Breckenfeld incorporates by reference paragraphs 6-27, as if those allegations were set forth verbatim.

29. At all times material to this action Defendant was an "employer" as defined by 42 USC § 2000 b. Defendant is therefore subject to the provisions of Title VII.

30. Plaintiff was qualified for her position as demonstrated by her background, training, experience, performance and merit raises received while working for Defendant.

31. Through Defendant's supervisor Rauch, Defendant engaged in a continuing course of discriminatory conduct, Breckenfeld was subjected to negative treatment, including leud and discriminatory comments because of her sex. This treatment created a hostile work environment.

32. Defendant removed responsibilities from Plaintiff and changed her reporting structure because of her gender. Defendant then claimed that Plaintiff was eligible for lay-off because of her lessened responsibilities.

33. By terminating Breckenfeld, Defendant took an adverse action against her. Defendant took such adverse action because of her gender.

34. Under Title VII, it is unlawful for an employer to discriminate against any individual because of her gender. By terminating Breckenfeld because of her gender, Defendant engaged in unlawful discrimination violation of Title VII.

35. As a result of the unlawful actions of Defendant as described above, Breckenfeld has suffered, and will continue to suffer, actual damages in the form of lost wages and lost employment benefits both past and future.

36. As a further result of Defendant's actions, Breckenfeld has also suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Breckenfeld is therefore entitled to compensatory damages.

37. Defendant's actions were done with malice and/or with reckless indifference to Breckenfeld's statutorily protected rights. She is therefore entitled to punitive damages.

38. Breckenfeld also seeks attorney's fees and costs of suit.

## Count Two– Age Discrimination in Employment Act

39. Breckenfeld incorporates by reference paragraphs 6-27, as if those allegations were set forth verbatim.

40. At all times material to this action Defendant was an "employer" as defined by 42 USC § 2000 b. Defendant is therefore subject to the provisions of ADEA.

41. Plaintiff was qualified for her position as demonstrated by her background, training, experience, performance and merit raises received while working for Defendant.

42. Defendant removed responsibilities from Plaintiff and changed her reporting structure because of her age. Defendant then claimed that Plaintiff was eligible for lay-off because of her lessened responsibilities.

43. By terminating Breckenfeld, Defendant took an adverse action against her. Defendant took such adverse action because of her age.

44. Under the ADEA, it is unlawful for an employer to discriminate against any individual because of her age. By terminating Breckenfeld because of her age, Defendant engaged in unlawful discrimination violation of the ADEA.

45. As a result of the unlawful actions of Defendant as described above, Breckenfeld has suffered, and will continue to suffer, actual damages in the form of lost wages and lost employment benefits both past and future.

46. As a further result of Defendant's actions, Breckenfeld has also suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. Breckenfeld is therefore entitled to compensatory damages.

47. Defendant's actions were done with malice and/or with reckless indifference to Breckenfeld's statutorily protected rights. She is therefore entitled to punitive damages.

48. Breckenfeld also seeks attorney's fees and costs of suit.

### Count Three--Title VII Retaliation

49. Breckenfeld incorporates by reference paragraphs 6-27, as if those allegations were set forth verbatim.

50. At all times material to this action Defendant was an "employer" as defined by Title VII. Defendant is therefore subject to the provisions of Title VII.

51. Plaintiff was qualified for her position as demonstrated by her background, training, experience, performance and merit raises received while working for Defendant.

52. Plaintiff engaged in protected conduct in that she lodged multiple complaints regarding gender discrimination, harassment and retaliation with the human resources department.

53. Defendant removed responsibilities from Plaintiff and changed her reporting structure because of her protected conduct. Defendant then claimed that Plaintiff was eligible for lay-off because of her lessened responsibilities.

54. By terminating Breckenfeld, Defendant took an adverse action against her. Defendant took such adverse action because of her protected conduct.

55. Under Title VII, it is unlawful for an employer to retaliate against any individual because she has opposed any practice made unlawful by the statute. TITLE VII. By terminating Breckenfeld in response to her opposition to gender discrimination and harassment, Defendant engaged in unlawful retaliation in violation of Title VII.

56. As a result of the unlawful retaliatory actions of Defendant as described above, Breckenfeld has suffered, and will continue to suffer, actual damages in the form of lost wages and lost employment benefits both past and future.

57. As a further result of Defendant's actions, Breckenfeld has also suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. She is therefore entitled to compensatory damages.

58. Defendant's actions were done with malice and/or with reckless indifference to Breckenfeld's statutorily protected rights. She is therefore entitled to punitive damages.

59. Breckenfeld also seeks attorney's fees and costs of suit.

## Count Four –Americans with Disability Act – Disability

60. Plaintiff incorporates Paragraphs 6 – 27 as though fully set forth herein.

61. At all times material to this action Defendant was an "employer" as defined by 42 USC § 12111(5)(A).  Defendant is therefore subject to the provisions of the Americans with Disabilities Act.

62. Plaintiff's medical conditions limited her ability to lift heavy weight, walk, sit and work within the meaning of 42 USC § 12102.

63. She was qualified for her position as evidenced by her tenure with APCON and performance history. By terminating Plaintiff, Defendant took adverse action(s) against her.

64. Defendant took such adverse action because of Plaintiff's disability and requests for accommodation.

## Count Five–Americans with Disability Act – Failure to accommodate

65. Plaintiff incorporates Paragraphs 6 – 27 as though fully set forth herein.

66. At all times material to this action Defendant was an "employer" as defined by 42 USC § 12111(5)(A).  Defendant is therefore subject to the provisions of the Americans with Disabilities Act.

67. Plaintiff's medical condition limited her ability to lift weight, walk, sit and work within the meaning of 42 USC § 12102.

68. She was qualified for her position as evidenced by her tenure with APCON and performance history and could have continued to work with reasonable accommodations.

69. Defendant failed to accommodate Plaintiff or to engage in the interactive process.

**Count Six- Family and Medical Leave Act – Interference**

70.     Plaintiff incorporates by reference paragraphs 6-27, as if those allegations were set forth verbatim.

71.     The FMLA entitles eligible employees to take up to twelve (12) weeks of unpaid leave annually for any of several reasons, including seeking medical treatment.  The FMLA defines an eligible employee as an employee who has been (1) employed for at least 12 months, (2) worked for at least 1,250 hours of service with the employer during the previous 12-month period, and (3) was employed by an employer who employs at least 50 employees within 75 miles of the worksite where the employee works.

72.     APCON is an "employer" as defined by the FMLA in 29 U.S.C. § 2611(4).

73.     During the time that Breckenfeld was employed by APCON, she was an "eligible employee" as defined by the FMLA in 29 U.S.C. § 2611(2). While Breckenfeld was employed by APCON, she had a "serious health condition" within the meaning of 29 U.S. C.§ 2611(11).

74.     Breckenfeld was entitled to intermittent medical leave to receive treatment for her serious health conditions as provided for in 29 U.S.C. § 2612(a)(1)(C).

75.     APCON interfered with Breckenfeld's rights under the FMLA by terminating her employment one week after taking intermittent FMLA leave and on a day, she was scheduled to take additional FMLA leave.

76.     As a result of APCON's violations of the FMLA, Breckenfeld suffered actual damages in the form of lost wages and benefits.

77.     As a result of this willful violation of the FMLA, Breckenfeld's statute of limitations is extended to three years and she is entitled to all damages outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other

compensation denied or lost as a result of APCON's violations of the FMLA, plus interest. In addition, Breckenfeld is entitled to liquidated damages equal to the amount of reimbursable compensation described above. Breckenfeld also seeks any additional equitable relief to which she is entitled, along with her reasonable attorney's fees and court costs.

### Count Seven – Family and Medical Leave Act – Retaliation

78. Breckenfeld incorporates by reference paragraphs 6-27, as if those allegations were set forth verbatim.

79. The FMLA also prohibits retaliation for availing oneself of her rights under the FMLA. Plaintiff must show that she was protected under the FMLA, she suffered an adverse employment action, and that a causal link exists between the protected activity and the adverse action.

80. In this case, as set forth above, Plaintiff was protected under the FMLA. She applied for and took her FMLA leave and upon return from leave she was singled out and terminated one week after utilizing her approved intermittent FMLA leave. She was also scheduled to take additional FMLA leave on the day she was terminated. Her termination was because she exercised her right to take FMLA leave. As a result of APCON's violations of the FMLA, Breckenfeld suffered actual damages in the form of lost wages and benefits.

81. As a result of this willful violation of the FMLA, Breckenfeld's statute of limitations is extended to three years and she is entitled to all damages outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of APCON's violations of the FMLA, plus interest. In addition, Breckenfeld is entitled to liquidated damages equal to the amount of reimbursable

compensation described above. Breckenfeld also seeks any additional equitable relief to which she is entitled, along with her reasonable attorney's fees and court costs.

## VII.
## PRAYER

82. Plaintiff respectfully requests that this Court grant the following relief from Defendant:

   A. A declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful;

   B. Back pay, front pay, pension benefits, stock options, bonuses, health benefits, and any other relief necessary to compensate Plaintiff;

   C. punitive damages;

   D. liquidated damages;

   E. Prejudgment and post-judgment interest;

   F. Attorney's fees necessary for prosecution of Plaintiff's claims;

   G. Costs for the prosecution of Plaintiff's claims, including the costs of expert witness fees; and

   H. Such other general relief to which Plaintiff shows herself justly entitled.

## VIII.
## JURY DEMAND

83. Plaintiff requests that all ultimate fact issues be submitted to a jury for determination. She has paid the jury fee.

Respectfully Submitted,

_____
Jane Legler
Texas Bar No. 03565820
Christine Neill
Texas Bar No. 00796793

Kyla Gail Cole
Texas Bar No. 24033113

Neill Legler Cole PLLC
3300 Oak Lawn Ave. Ste. 425
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (facsimiles)
christine@nlcemployeelaw.com
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com